UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Doris Miller<br><br>                Plaintiff(s),<br><br>    v.<br><br>The Regis Corporation, et al.<br><br>                Defendant(s). | No. CV 07-4587-GW(AJWx)<br><br>**RULINGS ON MOTION FOR SUMMARY JUDGMENT AND MOTION FOR CLASS CERTIFICATION** |

**<u>Miller v. The Regis Corporation</u>**, Case No. CV 07-4587 GW (AJWx)
Rulings on Motion for Summary Judgment and Motion for Class Certification

**I. BACKGROUND**

On June 8, 2007, Plaintiff Doris Miller ("Plaintiff") filed this action in Los Angeles County Superior Court. Plaintiff asserts that defendants The Regis Corporation ("Regis") and Supercuts Corporate Shops, Inc. (erroneously sued as Supercuts Corporate Stores, Inc.) ("Supercuts" and, together with Regis, "Defendants") violated various provisions of the California Labor Code, including provisions relating to overtime payments and payment of wages by checks from an out-of-state bank with no in-state address and no provision for negotiating such checks at no cost. Plaintiff also seeks "waiting penalties" under California Labor Code section 203 and penalties under the Labor Code Private Attorneys General Act of 2004, Cal. Labor Code § 2699(a). Plaintiff further alleges that defendants violated Business & Professions Code § 17200.

Defendants now seek summary judgment or partial summary judgment as to the claims in Plaintiff's Complaint.

**II. ANALYSIS – Motion for Summary Judgment**

A. <u>Summary Judgment Standards</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment,

> [i]f the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing, among other cases, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the

light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed.R.Civ.P. 56(e). Conclusory and/or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

B. Requirement of a Separate Statement

Plaintiff failed to file a separate statement in opposition to Defendants' separate statement and has therefore effectively admitted all the statements made in Defendants' separate statement. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("[W]hatever establishes a genuine issue of fact must *both* be in the district court file *and* set forth in the response.") (emphasis in original); C.D. Cal. L.R. 56-3 ("In determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion."). In fact, with the exception of a single unauthenticated pay stub attached to Plaintiff's Opposition, Plaintiff originally submitted no evidence whatsoever in opposing Defendants' motion.[1] Even the single pay stub attached to Plaintiff's Opposition did not correspond with the document Plaintiff discusses in her Opposition. *See* Plaintiff's Opposition at 11:1-19 & Exh. A.

Notwithstanding this failure, "[s]ummary judgment may be resisted and must be denied" if the movant fails to meet its "burden of demonstrating the absence of triable issues." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Here, however, Defendants have met their burden, as discussed further below.

Among those facts Plaintiff is deemed to have admitted are the following:

- "Commissions are factored into the regular rate of pay calculation for

---

[1] Plaintiff did subsequently submit three additional pay stubs, which this Court allowed and had the Defendants address. As shown in the "2d Supplemental Declaration of Barbara Muellerleile" which is attached to Defendants' 2d Supplemental Brief in Support of the Motion for Summary Judgment, those items do not create any material factual dispute.

2

    purposes of overtime pay." Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law ("DSUF") ¶ 6;

- "All forms of pay, including hourly pay, commissions and any other form of pay, are added together, then divided by hours worked during the payroll period to determine the employee's 'regular rate of pay' for the payroll period. The regular rate of pay is divided by two to determine the employee's 'half-time premium.' The overtime hours worked are multiplied by the half-time premium. That calculation produces the premium pay amount for overtime for the payroll period. The premium pay for overtime is added to the regular pay to arrive at the total hourly pay for the payroll period." DSUF ¶ 7;

- "Supercuts does not pay stylists on a fluctuating workweek." DSUF ¶ 13;

- "Supercuts uses a 15-day period to determine the regular rate of pay, by adding together all forms of pay earned in that time period (hourly, commissions, etc.) and dividing that sum total by the number of hours worked to determine the rate for purposes of the overtime calculation." DSUF ¶ 14;

- "In *Solis v. Regis*, a 'check-cashing' class comprised of all California Supercuts employees during the class period was certified." DSUF ¶ 18;

- "The 'check-cashing' class that Plaintiff is seeking to represent in the present action, is the same as the certified check-cashing class in the *Solis v. Regis* action." DSUF ¶ 19;

- "Plaintiff Doris Miller has not opted out of the certified class in the *Solis v. Regis* action and thus is a member of the class." DSUF ¶ 20;

- "Plaintiff has never quit her employment and has never been discharged from employment." DSUF ¶ 21.

C. <u>The Merits</u>

    *1. Overtime Claim*

Defendants argue that, as a factual matter, Plaintiff was always paid any overtime due her, whether in connection with commissions, "off the floor" work or "training time." Defendants have presented evidence that all of these components were factored into

3

Plaintiff's regular rate[2] of pay, from which the overtime rate was calculated and paid. *See* DSUF ¶¶ 3-7, 9-12, 14.[3] Plaintiff disputes whether she was actually ever paid overtime, but does not submit <u>any</u> evidence on the issue which supports this assertion. Instead, she repeatedly sets forth in her briefing virtually incomprehensible calculations. Ignoring the fact that Plaintiff frequently discussed and analyzed paystubs which she either did not submit or submitted but did not authenticate, Defendants have demonstrated that they did include all of the different elements of Plaintiff's pay, including commissions, in calculating Plaintiff's regular rate for purposes of overtime pay. However, at the first hearing on these motions the Court raised a question as to whether Defendants correctly <u>applied</u> the regular rate they derived to the hours of overtime Plaintiff actually worked.

Overtime hours are to be paid at "at the rate of no less than one and one-half times the <u>regular rate</u> of pay...." Cal. Labor Code § 510(a) (emphasis added). All parties have agreed that Defendants make use of the "regular rate" only with respect to the .5 of that 1.5 figure; the 1.0 portion is paid at the normal hourly rate (which, again, fluctuates depending upon the particular employee's average hourly service sales). Defendants refer to this as the "half-time premium." *See* Muellerleile Decl. ¶ 9. Notwithstanding the fairly clear language of section 510(a), Defendants posit that "[i]t is not clear that California law manifests a different intent with respect to the calculation of overtime."

Despite what appears to be the plain language of section 510(a), Defendants correctly point out that this calculation has been held to be permissible under the Division of Labor Standards Enforcement ("DLSE") Enforcement Policies and Interpretation Manual ("DLSE Manual"). *See* Dacre Decl. (filed 2/22/08) at ¶¶ 49.2.1.2 and 49.2.1.7. The DLSE, however, is entitled to no deference under California law. *See Gattuso v.*

---

[2] The "regular rate" is different than an employee's normal hourly rate at Supercuts, which itself depends on the employee's average hourly service sales and can vary from 15-day period to 15-day period, but never falls below a minimum base hourly rate. *See* Muellerleile Decl. ¶¶ 5-8 & Exh. 1; Quintero Decl. ¶¶ 3-4.

[3] Because all of this is factored into the regular rate of pay calculation, Plaintiff's repeated assertions that she was paid less than the regular rate if she worked non-productive overtime hours makes no sense. *See, e.g.*, Plaintiff's Opposition at 10:3-4, 10:15-19. Non-productive (in terms of producing no commissions) hours simply <u>decrease</u> the regular rate (unless no commissions whatsoever are obtained, in which case nonproductive hours simply maintain the regular rate at the normal hourly rate); they are not paid at <u>less than</u> the regular rate.

*Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 563 (2007); *Sumuel v. ADVO, Inc.*, 155 Cal.App.4th 1099, 1109 (2007); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F.Supp.2d 609, 617 (N.D. Cal. 2007).

Defendants go further, however, demonstrating that their half-time premium calculation is consistent with federal law. Plaintiff's claims, of course, are under California law. Nevertheless, federal law, like California law, requires overtime compensation at one and a half times the regular rate of pay, *see* 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.107; and the regulations permit the half-time premium calculation. *See* 29 C.F.R. § 778.118.[4] California courts have deferred to part 778 of Title 29 of the Code of Federal Regulations, whether it constitutes an interpretive bulletin or a set of regulations. *See Huntington Mem'l Hosp. v. Superior Court*, 131 Cal.App.4th 893, 904 n.4 (2005).

Ultimately, however, Plaintiff conceded both in her briefs and at oral argument that Defendants' use of the "half-time premium" is permissible. *See, e.g.*, Plaintiff's Reply to Defendants' Supplemental Brief at 8:4-6 ("Under both federal and California state law, overtime pay is calculated by multiplying hours worked overtime times one half the employee's 'regular rate' of pay."); *id.* at 8:27-28 ("Plaintiff does not question the legality of a piece rate method of overtime calculation under the DLSE guidelines....").

Rather than dispute the permissibility of using a "half-time premium" as Defendants understand it, Plaintiff only argues that Defendants have erred in calculating the "regular rate." Defendants calculate the "regular rate" by way of a 15-day work period. "As long as the minimum hourly rates…are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit. They may agree to pay compensation according to any time or work measurement they desire." *Walling v. Youngerman-Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424-25 (1945).

Plaintiff argues that the manner in which Defendants calculate the "regular rate" is impermissible, that it in essence is the equivalent of a "fluctuating workweek" method because it means that the more non-productive overtime hours worked, the lower the

---

[4] Defendants have provided the Supplemental Declaration of Barbara Muellerleile, Regis's Director of Payroll, who is responsible for both Defendants' payrolls. *See* Muellerleile Supp. Decl. ¶¶ 1, 4. Muellerleile states that the use of a "half time premium" is also specifically sanctioned by the American Payroll Association, "which models its guidelines after the [Fair Labor Standards Act]." *Id.* ¶ 11.

employee's regular rate of pay would be. Plaintiff has not explained why use of the 15-day period would always favor the employer. It may be true that one of the weeks within that period would be slow for the hairstylist and one would be busy. However, Plaintiff does not explain why the Court must examine this situation as the slow week lowering the rate paid for overtime instead of the busy week raising the rate paid for overtime.

Although Plaintiff's view of the situation might have some merit where the employee works more than 40 hours in only one of the two weeks (and assuming that the employee does not enjoy more commissions as a result of having worked more), Plaintiff does not explain why her view should prevail where the employee works more than 40 hours in both of the two weeks. For instance, if the employee works 45 hours in the first week and then 55 hours in the second week and earns more commissions in the second week, her work in the second week would potentially raise the rate she would otherwise be able to enjoy on the first week.

In any event, even if it was true that this method of calculation had the effect of lowering the "regular rate" for purposes of overtime calculation, Plaintiff has not explained why that is prohibited. *See* Chin, Cathcart, et al., <u>California Practice Guide: Employment Litigation</u> ("<u>Chin, Cathcart</u>") (2007) § 11:825, at 11-90 ("An employee's regular pay rate may be calculated on the basis of the employee's average earnings during a workday or other period of time regularly computed for payroll purposes."). In other words, Plaintiff has not identified why she is entitled to a minimum overtime pay rate.

Citing to various appearances of the term "workweek" in the California Labor Code, Plaintiff merely argues that the regular rate of pay must be based on a single week. However, Plaintiff's statutory and case citations in this regard simply support the rule that <u>overtime hours</u> are determined on a daily and weekly basis, not that a <u>regular rate of pay</u> cannot be based on more than a one-week time period. *See, e.g.*, Plaintiff's Opposition at 3:15-16 & n.2, 4:5-17; 29 C.F.R. § 778.103.

Plaintiff cites *Skyline Homes, Inc. v. Department of Industrial Relations*, 165 Cal.App.3d 239 (1985), disapproved on other grounds in *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557, 561 (1996); *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal.App.4th 893 (2005); and *Espinoza v. Classic Pizza, Inc.*, 114 Cal.App.4th 968 (2003). Although those cases support the proposition that no more than 40 hours can be used in the

6

calculation to determine the regular rate for a workweek, they do not require that employers actually use a single workweek as the time period by which to measure the regular rate. In addition, because (as expressed above) Plaintiff earns commissions and might very well earn more commissions the more hours she works, this case does not necessarily present the problem the *Skyline Homes* court confronted with the fluctuating workweek – i.e., "the more hours an employee works overtime, the lower the 'regular rate' becomes." *Skyline Homes*, 165 Cal.App.3d at 245.[5]

Plaintiff cites 29 C.F.R. § 778.503 and 29 C.F.R. § 778.500(b) as authority for why Defendants' compensation system is unlawful under federal and California law. Section 778.503 involves "percentage of wage" bonuses, which are not at issue here. The situation presented in section 778.500(b) applies where a different rate is employed for the same work, depending on whether the work is performed during overtime or non-overtime hours. *See* Plaintiff's Opposition at 8:21-9:1. That is not the case here. Under Defendants' compensation system, an employee will receive the same basic pay rate for the same work whenever that work is performed. Plaintiff further argues that Defendants' compensation system is unlawful under California Labor Code sections 510, 515(d) and 1194 as well as unspecified orders of the California Industrial Welfare Commission. On the contrary, Defendants' payment system does not appear to violate the terms of sections 510, 515(d) or 1194 as none of those sections require a certain time period for calculation of a "regular rate" for an hourly employee.[6]

In supplemental briefing invited by the Court, Plaintiff again asserted that "California law is adamant that **hourly workers** must have a regular rate based only upon a 40 hour workweek." Plaintiff's Reply to Defendants' Supplemental Brief at 10:1-2 (emphasis in original). Despite this purportedly "adamant" stance, Plaintiff has failed to

---

[5] *Skyline Homes* did indeed distinguish the Fair Labor Standards Act by indicating that, under that legislation, "the 'workweek' may properly constitute the unit of time used to determine whether overtime compensation is due." 165 Cal.App.3d. at 247-48. However, it did so in order to contrast the Industrial Welfare Commission wage order which prohibited work – without overtime compensation – beyond 40 hours a week or 8 hours a day. *Id.* at 248.

[6] Section 515(d) comes closest, but involves computation of the overtime rate "required to be paid to a nonexempt full-time salaried employee…." Cal. Labor Code § 515(d) (emphasis added); *see also* Chin, Cathcart, §§ 11:932-935, at 11-112 – 113. Plaintiff is not a salaried employee.

actually cite any California law supporting this notion and has instead simply repeated her arguments made in opposition to Defendants' initial summary judgment briefing, albeit by reference to other federal regulations and case law which still do not appear to stand for the precise proposition she seeks to advance here.[7] Plaintiff's insistent argument appears to be little more than a Potemkin village.

Contrary to Plaintiff's suggestion, *see* Plaintiff's Reply to Defendants' Second Supplemental Brief at 3:27-4:3, she bears the burden of persuasion in this case, not Defendants, although Defendants bear the initial burden of production and the ultimate burden of persuasion on their motion. *See Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); *see also Niles v. United States*, 520 F.Supp. 808, 814 (N.D. Cal. 1981), *aff'd*, 710 F.2d 1391 (9th Cir. 1983).[8] In light of 1) Defendants' demonstration (and Plaintiff's failure to establish a genuine issue of material fact otherwise) that Plaintiff was paid overtime based on a "regular rate" which included all forms of her compensation, 2) Defendants' showing that there is nothing contrary to California law about the way in which they calculate the "regular rate" for overtime pay or the use of a "half-time premium" as they understand it in applying that "regular rate" and 3) Plaintiff's failure to demonstrate the illegality of the calculation method and admission as to the acceptability of the "half-time premium" application, the Court grants Defendants'

---

[7] In supplemental briefing, Plaintiff cited 29 C.F.R. sections 778.103, 778.104, 778.108, 778.109, 778.110 and 778.119, along with 29 C.F.R sections 788.118 and 788.120, *Skyline Homes* and *Espinoza*. As to Plaintiff's citation to 29 C.F.R. sections 788.118 and 120, she presumably means to cite sections 778.118 and 120. In any event, none of these federal regulations or California cases *require* a single workweek for purposes of calculating a regular rate, although several of them *reference* a workweek, presumably because most employers would simply use such a time period. Finally, Plaintiff cites paragraph 49.1.4 of the DLSE Manual which states, in part, "[o]rdinarily, the hours to be used in computing the regular rate of pay may not exceed the legal maximum regular hours which, in most cases is 8 hours per day, 40 hours per week." Plaintiff's Reply to Defendants' Supplemental Brief at 10:18-11:1. The DLSE Manual's use of the term "[o]rdinarily" and the phrase "per week" are two indications that a regular rate calculation need not be based <u>always</u> on a <u>single</u> week.

[8] *Cf. Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 983 (C.D. Cal. 1999) ("[I]t is incorrect to speak in terms of 'burdens' when dealing with legal issues rather than matters of evidence… Burdens are relevant when evidence is ambiguous or evenly balanced. The result of a question of law cannot be 'ambiguous' or 'evenly balanced.' While some questions are more difficult than others, eventually the judge must answer the question to the best of his or her ability. Thus, burdens of proof have no place in Rule 12(b)(6) motions or other questions of law."); *id.* at 984 n.6 ("Though burdens of proof are important for <u>evidence-based</u> summary judgment motions…[w]hen faced with a Rule 56 motion, a plaintiff bears the burden of proof to establish every fact regarding which he or she would bear the burden at trial.") (emphasis added).

motion on Plaintiff's first claim for relief.

### 2. *Out-of-State Check Claim*

Defendants next argue that Plaintiff's out-of-state check claim fails because Plaintiff is already a member of a certified class as to this issue. Plaintiff contends that she has withdrawn this claim. As Plaintiff has not yet dismissed this claim despite the Court's earlier indication that she should do so or suffer summary judgment thereon, the Court grants summary judgment on the claim.

### 3. *Waiting-Time Penalties*

Defendants next argue that Plaintiff cannot pursue her waiting time penalties claim because she was not discharged and did not quit, as is required by the plain terms of Labor Code section 203. *See* Cal. Labor Code § 203 ("If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits...."). Plaintiff failed to address this argument or this claim in her Opposition and admitted this fact by failing to respond to Defendants' separate statement. *See* DSUF ¶ 21. The Court therefore grants summary judgment on the claim.

### 4. *Private Attorneys General Act/Section 17200*

Finally, Defendants argue that, because Plaintiff does not have a viable claim for any Labor Code violation, she cannot prevail on either her Private Attorneys General Act claim or her section 17200 claim. Plaintiff did not address these claims in her briefs and did not oppose the relevant facts set forth in Defendants' separate statement. The Court therefore grants Defendants' motion for summary judgment on both of these claims for relief.

### 5. *Other Issues*

Plaintiff referenced a potential violation of California Labor Code section 226(a)(9) in her Reply to Defendants' Supplemental Brief, but her Complaint does not include a claim for violation of section 226. Plaintiff has never sought to amend her Complaint.

## III. ANALYSIS – Class Certification

Because of the above ruling, Plaintiff's motion for class certification is moot.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted as to all of the claims in the Complaint. Defendants are to prepare and submit a proposed Judgment by June 23, 2008.

Dated: This __17th__ day of June, 2008

_____
GEORGE H. WU
United States District Court Judge